THE PEOPLE OF THE STATE OF NEW YORK ex rel. KINGS COUNTY LIGHTING COMPANY, Respondent, *v*. WILLIAM R. WILLCOX et al., Composing the Public Service Commission of the State of New York for the First District, Appellants.

Corporations — public service commission — valuation of business and property of gas company for purpose of fixing rate of return on investment of company — "going value" — cost and expense of development of business and plant of company — cost of reproduction of plant — when cost of paving and repaving of streets cannot be considered in making valuation.

1. The public is entitled to be served by a public service corporation at reasonable rates, and such corporation is entitled to a fair return on its investment on the value of the property used by it in the public service (Pub. Serv. Com. Law, Cons. Laws, chap. 48, § 72), treating a reasonably necessary and proper outlay in building up the business as an investment, for the purpose of determining a fair rate of return to be charged.

2. Where there is assumed to be a reasonable need of the service from a gas company from the start, and that the failure to pay dividends is not due to bad management, an accumulation of a surplus or undivided profits, the investment of earnings in permanent additions or betterments allowed for in the structural valuation, or to other causes besides those under consideration, "going value" is an element which the commission is required to determine as a distinct item from good will in making an appraisement on which to compute the fair return to which the company is entitled, and expert evidence is competent as to the cost of building up the business.

3. "Going value" for rate purposes as involved in such case is the amount equal to the deficiency of net earnings below a fair return on the actual investment due solely to the time and expenditures reasonably necessary and proper to the development of the business and property to its present stage, and not comprised in the valuation of the physical property.

4. The most satisfactory method of appraising "going value" is to show the actual experience of the company, the original investment, its earnings from the start, the time actually required and expenses incurred in building up the business, all expenditures not reflected by the present condition of the physical property, the extent to which bad management or other causes prevented or depleted earnings, and any other facts bearing on the question, treating the development expenses, whether paid from earnings or not, as part of the capital account, keeping in mind that the ultimate fact to be determined is not the amount of the expenditures, but the deficiency in the fair return to the investors due to the causes under consideration.

5. While the cost of reproduction less accrued depreciation rule seems to be the one generally employed in rate cases, the rule should not be so applied as to deprive the corporation of a fair return at all times on the reasonable, proper and necessary investment made by it to serve the public, and on the other hand it should not be so applied as to give the corporation a return on improvements made at public expense which in no way increase the cost to it of performing that service. Hence the relator is not entitled, upon the facts shown in this case, to have the cost of reproduction of paving now in the streets but not in place at the time the mains were laid, allowed for either in ascertaining the value of its property used in the public service, or in ascertaining the capital actually expended.

6. The public service commission is not entitled, upon the facts shown in the record, in ascertaining the amount which should constitute a proper return, to consider as part of what accrues to the relator as gross receipts of its yearly operations the annual appreciation in the value of its land.

*People ex rel. Kings County Lighting Co.* v. *Willcox,* 156 App. Div. 603, modified.

(Argued January 7, 1914; decided March 24, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial depart-

ment, entered June 9, 1913, which sustained a writ of certiorari and reversed a determination of the state public service commission for the first district fixing the maximum rate for gas to be charged by the relator in the 30th ward of the borough of Brooklyn.

The relator was organized in 1904, and merged with the Kings County Gas and Illuminating Company, which was organized in 1889, and began supplying gas in October, 1891.

The Appellate Division held that the determination of the commission was wrong in three respects, which are presented by four questions certified for review, viz.:

(1) Was the relator entitled, upon the facts shown in the record, to have the commission make an allowance for going value in determining the value of the relator's property used in the public service?

(2) Was the relator entitled, upon the facts shown in the record, to have the cost of reproduction of paving now in the streets but not in place at the time the mains were laid, allowed for in ascertaining the value of its property used in the public service?

(3) Was the relator entitled, upon the facts shown in the record, to have the cost of reproduction of paving now in the streets but not in place at the time the mains were laid, allowed for in ascertaining the capital actually expended?

(4) Was the commission entitled, upon the facts shown in the record, in ascertaining the amount which should constitute a proper return, to consider as part of what accrues to the relator as gross receipts of its yearly operations the annual appreciation in the value of its land?

*George S. Coleman* and *Oliver C. Semple* for appellants. The recognition properly to be given to going value in rate cases is two-fold: 1. In awarding to the physical plant of the company a value approaching meas-

31

urably to its full value according as the plant is shown to have justified its location and proved its efficiency by steady operation and the giving of a service approaching in like measure to its normal capacity. 2. In awarding as a fair return such amount as shall make up for any reasonable expenses and sacrifices incurred in the establishment of the business. It is not necessary that the item of going value should be estimated as a separate and several item in the calculation of value. (*Cedar Rapids Gas Light Co.* v. *Cedar Rapids,* 144 Iowa, 426; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids,* 223 U. S. 655; *Cedar Rapids Water Co.* v. *Cedar Rapids,* 118 Iowa, 234; *Spring Valley Water Works* v. *San Francisco,* 192 Fed. Rep. 137; *Cumberland Tel. Co.* v. *Louisville,* 187 Fed. Rep. 637; *Contra Costa Water Co.* v. *Oakland,* 113 Pac. Rep. 668; *Knoxville* v. *Water Co.,* 212 U. S. 1; *Shepard* v. *U. P. R. R. Co.,* 184 Fed. Rep. 765.) If the reasonable rule is adopted of treating the cost of establishing a business as a loss to be recouped out of earnings, it must be provided for from the divisible profits. It is logically a question to be considered in fixing the rate of return; if the returns are impaired while the business is being established reimburse the impairment by more liberal returns in profitable years. The cost of establishment of the business as determined by the actual experience of the company will not be a permanent sum. It will vary from year to year as the expenses increase it or as returns for each year may diminish it. If it is ascertained for any particular inquiry, and allowance therefor is made by way of an increased return, then upon any subsequent inquiry the cost will not be the same as before but less by the amount of increased returns which have been given for it or more on account of intermediate expenses, but in any event by reference to the previous determination easily again to be ascertained. (*Hill* v. *Antigo Water Co.,* 3 Wis. R. R. C. Rep. 623; *City of Racine* v. *Racine Gas Light Co.,* 6 Wis. R. R. C. Rep.

228; *Payne* v. *Wisconsin Tel. Co.*, 4 Wis. R. R. C. Rep. 1; *Meyer* v. *Sheboygan Gas Light Co.*, 9 Wis. R. R. C. Rep. 439.)   The relator was not entitled, upon the facts shown in the record, to have the cost of reproduction of paving now in the streets but not in place at the time the mains were laid, allowed for in ascertaining the value of its property used in the public service nor was it entitled, upon the facts shown in the record, to have the cost of reproduction of paving now in the streets but not in place at the time the mains were laid, allowed for in ascertaining the capital actually expended. (*People ex rel. B. & L. E. T. Co.* v. *State Board of Tax Comrs.*, 209 N. Y. 496; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids*, 144 Iowa, 426; *Des Moines Gas Co.* v. *City of Des Moines*, 199 Fed. Rep. 204; *State Journal Printing Co.* v. *Madison Co.*, 4 Wis. R. R. C. Rep. 501; *Ripon* v. *Ripon Co.*, 5 Wis. R. R. C. Rep. 1; *Buffalo Gas Co.* v. *City of Buffalo*, 3 P. S. C. Rep. 553; *City of Milwaukee* v. *Milwaukee El. R. & L. Co.*, 11 Wis. R. R. C. Rep. 1; *Minnesota Rate Cases*, 230 U. S. 352.)   The question as to whether the commission was entitled, upon the facts shown in the record, in ascertaining the amount which should constitute a proper return, to consider as part of what accrues to the relator as gross receipts of its yearly operations the annual appreciation in the value of its land, should be answered in the affirmative. (*Advance in Rates, Western Case*, 20 I. C. C. Rep. 307; *Spokane* v. *N. P. Ry. Co.*, 15 I. C. C. Rep. 376; *People ex rel. M. Ry. Co.* v. *Woodbury*, 203 N. Y. 231.)

*Morgan J. O'Brien, James F. Meagher* and *Swinburne Hale* for respondent.   The first question certified should be answered in the affirmative. (*Omaha* v. *Omaha Water Co.*, 218 U. S. 180; *Nat. Water Works Co.* v. *Kansas City*, 62 Fed. Rep. 853; *Appleton Water Works Co.* v. *R. R. Com. of Wisconsin*, 142 N. W. Rep. 476; *Missouri, Kansas & Texas Ry. Co.* v. *Love*,

484   People ex rel. Kings Co. L. Co. *v.* Willcox.

[210 N. Y.]              Opinion, per Miller, J.              [Mar.,

177 Fed. Rep. 493; *Des Moines Water Co.* v. *Des Moines*, 192 Fed. Rep. 193; *Pioneer Tel. & Tel. Co.* v. *Westenhaver*, 29 Okla. 429; *Hill* v. *Antigo Water Co.*, 3 Wis. R. R. C. Rep. 623; *State Journal Printing Co.* v. *Madison Gas & El. Co.*, 4 Wis. R. R. C. Rep. 501; *City of Racine* v. *Racine Gas Light Co.*, 6 Wis. R. R. C. Rep. 228; *Matter of Public Service Corp. Passaic District*, 3 N. J. P. U. Com. Rep. 246.) The second question should be answered in the affirmative. (*Consolidated Gas Co.* v. *New York*, 157 Fed. Rep. 849; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19.) The third question should be answered in the affirmative. (*Minnesota Rate Cases*, 230 U. S. 352.) The fourth question certified should be answered in the negative. (*Consolidated Gas Case*, 212 U. S. 52.)

Miller, J.   It is now generally recognized that " going value," as distinct from " good will," is to be considered in valuing the property of a public service corporation either for the purpose of condemnation or rate making, but there is a wide divergence of view as to how it is to be considered. The commission in this case says it was taken into account in valuing the plant as a " going " and not as a " defunct or static " concern and that it was also considered in fixing the fair rate of return. The Appellate Division says that there is no proof of the latter fact in the record. Thus the first question certified requires us to decide whether " going value " is to be appraised as a distinct item, or whether it is sufficient to regard it as something vague and indefinable to be given some consideration but not enough to be estimated. The valuation of the physical property was determined by ascertaining the cost of reproduction less accrued depreciation. Preliminary and development expenses prior to operation were included, but no allowance was made for the cost of developing the business. By that method the plant was valued in a sense as a " going concern." In

other words "scrap" values were not taken; but to say that that sufficiently allows for "going value" is the same as to say that "going value" is not to be taken into account. The problem is to determine what is fair to the public and the company. The public is entitled to be served at reasonable rates and the company is entitled to a fair return on its investment, on the value of the property used by it in the public service. (*Smyth* v. *Ames*, 169 U. S. 466; *San Diego Land & Town Co.* v. *National City*, 174 U. S. 739; *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439; *Minnesota Rate Cases*, 230 U. S. 352.) It would have been entitled to a return on the valuation adopted by the commission, if it had no customers, but was just ready to begin business, whereas it had a plant in operation with an established business, which every one knows takes time, labor and money to build up.

If "going value" is capable of ascertainment it will not do for the commission vaguely to consider it in fixing the fair rate of return. That no appreciable allowance was made in this case is shown both by the rate fixed and by the following statement in the opinion of the commission:

"It should be noted that the plant has been in operation for nearly twenty years, and it might be argued with considerable force that two decades should be sufficient for the company to recoup its early deficiencies below a fair rate of return, if any such deficiencies ever existed. If the company has not recouped itself by this time, under such circumstances it is doubtful whether the present consumers ought be burdened for this reason."

The first question certified then resolves itself into two heads: 1. Is "going value" a distinct item to be appraised and included in the base upon which the fair return is computed? 2. Was the evidence in this case sufficient to justify an allowance for it?

The opinion of Mr. Justice CLARKE below saves me

the necessity of citing and analyzing the cases bearing on the first branch of the question.　We concur fully in what he has said on the subject and in his conclusion that there is no "logical difference between allowing 'going value' in the valuation of a plant when it is to be taken entirely by the public and allowing the same element when valuing the same plant for rate making purposes."　A case since decided should be added to the rate cases cited by him in which "going value" has been allowed, *i. e.*, *Public Service Gas Co.* v. *Board of Commissioners* (87 Atl. Rep. [N. J.] 651).

It is no answer to say that in condemnation cases the exchange value is taken, and that that depends on the rates charged, the thing to be determined in rate cases. Of course, a rule of valuation might be adopted in a condemnation case which would not work in a rate case; but if the cost of reproduction less depreciation rule be adopted, as appears to have been done in *National Waterworks Company* v. *Kansas City* (62 Fed. Rep. 853) and *City of Omaha* v. *Omaha Water Company* (218 U. S. 180), the leading condemnation cases in the Federal courts in which "going value" was considered, it is impossible to see why the "going value" could not be determined in both classes of cases in precisely the same way.

The difficulty of determining the "going value" will not justify the disregarding of it.　Rate making is difficult.　But that will not justify confiscation.　The difficulty, however, will lessen, as it does in most cases, when we cease to think about the subject vaguely.　What then, is "going value," and how is it to be appraised?

It takes time to put a new enterprise of any magnitude on its feet, after the construction work has been finished. Mistakes of construction have to be corrected.　Substitutions have to be made.　Economies have to be studied. Experiments have to be made, which sometimes turn out to be useless.　An organization has to be perfected. Business has to be solicited and advertised for.　In the

People ex rel. Kings Co. L. Co. *v.* Willcox.   487

1914.]            Opinion, per Miller, J.            [210 N. Y.]

case of a gas company, gratuitous work has to be done, such as selling appliances at less than a fair profit and demonstrating new devices to induce consumption of gas and to educate the public up to the maximum point of consumption.   None of those things is reflected in the value of the physical property, unless, of course, exchange value be taken, which is not admissible in a rate case. The company starts out with the " bare bones " of the plant, to borrow Mr. Justice Lurton's phrase in the *Omaha Water Works Case (supra)*.   By the expenditure of time, labor and money, it co-ordinates those bones into an efficient working organism and acquires a paying business.   The proper and reasonable cost of doing that, whether included in operating expenses or not, is as much a part of the investment of the company as the cost of the physical property.

The investors in a new enterprise have to be satisfied as a rule with meagre or no returns, while the business is being built up.   In a business subject only to the natural laws of trade, they expect to make up for the early lean years by large profits later.   In a business, classified among public callings, the rate-making power must allow for the losses during the lean years, or their rate will be confiscatory and of course will drive investors from the field.   In the former class, the value of the established business is a part of the " good will " and may be determined by taking a given number of years' purchase of the profits, or exchange value may be considered.   In the latter case, a different rule must be adopted.

Referring again to the *Ames Case (supra)* the public is entitled to be served at reasonable rates, and the corporation is entitled to a fair return on the property used by it in the public service, no more, no less, always assuming, of course, that the return is computed on a proper valuation.   That was not made so by statute, but was the rule at common law, which justifies legislatures and

commissions in fixing rates.  If then a public service corporation has received more or less than a fair return, it has received more or less, as the case may be, than was its due, irrespective of whether a rate had been fixed by public authority.  If a deficiency in the fair return in the early years was due to losses or expenditures which were reasonably necessary and proper in developing efficiency and economy of operation and in establishing a business, it should be made up by the returns in later years.  If there was a fair return from the start the corporation has recived all it was entitled to, irrespective of how much of the earnings may have been diverted to the building up of the business.

To view the matter in another aspect, take the case of a public service corporation with a plant constructed just ready to serve the public.  It is going to take time and cost money to develop the highest efficiency of the plant and to establish the business.  Three courses seem to be open with respect to rate making, viz.: 1, to charge rates from the start sufficient to make a fair return to the investor and to pay the development expenses from earnings, a course likely to result in prohibitive rates except under rare and favorable circumstances; 2, to treat the development expenses as a loss to be recouped out of earnings, but to be spread over a number of years, in other words, as a debt to be amortized, that involves complications, but would seem to be fairer to the public and certainly more practical than the first; 3, to treat the development expenses, whether paid from earnings or not, as a part of the capital account for the purpose of fixing the charge to the public.  The last course would seem to be fairest to both the public and the company, as well as the most practical.

It may be, as is urged, that a well-conducted enterprise will charge the cost of developing the business to operating expenses, and that it would open the door to an overissue of securities to permit the capitalization of early losses,

In answer, it is sufficient to say that we are dealing, not with proper methods of bookkeeping, not with the proper capitalization upon which to issue securities, but solely with the fair return which the company is entitled to receive from the public. Treating a reasonably necessary and proper outlay in building up a business as an investment for the purpose of determining the fair rate of return to be charged is far from holding that it should be treated as capital against which securities might be issued.

We do not say as matter of law that the third course above outlined should be adopted as an original proposition. That may present a question of economics, depending on the particular conditions involved. The commission in this case had to determine the rate to be charged, not by a new company with no business, but by an old company with an established business. The first question, therefore, to determine on this branch of the case was whether the company had already received a fair return on its investment. If it had received such return from the start, or if in later years it had received more than a fair return, the public would already have borne the expense of establishing the business in whole or in part, and to that extent the question of "going value" for the purpose of fixing a present rate would be eliminated; for it must constantly be kept in mind in dealing with this problem that the company is entitled to a fair return and no more. If it has already had it, that is the end of the matter. If it did not receive a fair return in the early years owing to the establishment of the business, a subsequent rate must allow for that loss or it will be confiscatory. Now, no dividends appear to have been paid by the original company or by the relator prior to 1907. Assuming a reasonable need of the service from the start, and that the failure to pay dividends was not due to bad management, an accumulation of a surplus or undivided profits, the investment of earning in per-

490 People ex rel. Kings Co. L. Co. *v.* Willcox.

[210 N. Y.]      Opinion, per Miller, J.      [Mar.,

manent additions or betterments allowed for in the structural valuation, or to other causes besides those under consideration, none of which is asserted, it would seem plain that " going value " was an element in this case which the commission was required to determine in making an appraisement on which to compute the fair return to which the company is entitled.

It is urged that an unprofitable business will thus have a greater value for rate-making purposes than one profitable from the start. That again overlooks the fundamental consideration that a public service corporation is entitled to a fair rate of return from the beginning of its investment and no more. If the shareholders have been deprived of a fair return on their investment because of the time and expense reasonably and properly required to build up the business, they have, to the extent of that deprivation, added to their original investment and are entitled to a return upon it. If, however, a fair return in addition to the expense of building up the business has been earned from the start, the public, not the shareholders, have paid the development expenses. We are dealing, not with exchange values, but with the value upon which the company is entitled to earn a return. In this connection it is to be observed that the statements in the opinions of the courts, in reference to computing the fair rate of return on present values, have for the most part been made in cases in which the precise question under consideration was not directly involved, and in which no attempt was made to limit the elements composing the problem. Manifestly, a rate computed on the cost to-day of reproducing the bare plant would not be fair. Experience is proverbially expensive. With the advantage of that experience the same or an equally efficient plant could be constructed to-day at a cost much below the actual and necessary investment of the company in both plant and experience. Indeed, wholly apart from the intangible thing called the going business, the reproduc-

tive value to-day of the physical property would not necessarily include the actual and legitimate investment in tangible property which may have been entirely replaced, not because of depreciation, but to meet advances in mechanical science, new conditions and increasing demands not reasonably to have been foreseen at the start. I am not now speaking of replacements made with fresh capital, about which there is no question in this case. The term "going value," though not exactly defined, has been used quite generally to comprise the elements not included in the structural value of the property in its present condition. The term is not important. The point is that in some manner and under some appropriate heading a due allowance must be made for the investment in those elements. No inflexible rule will in the long run be just both to the public and the corporation. The right to limit the corporation to a fair return fixed by public authority necessarily involves the correlative right in the corporation to be assured of that fair return during all the time that its capital is employed in the public service. The statute governing this case (Public Service Commissions Law, Cons. Laws, ch. 48, section 72) provides:

"In determining the price to be charged for gas * * * the commission may consider all facts which in its judgment have any bearing upon a proper determination of the question although not set forth in the complaint and not within the allegations contained therein, with due regard among other things to a reasonable average return upon capital actually expended and to the necessity of making reservations out of income for surplus and contingencies."

Of course, a reasonable need for the service from the start and reasonably good management are assumed. While, within reasonable limits, service may be provided for anticipated needs, a company should not construct a plant in a wilderness and, after a city has been built

around it, expect to recoup its losses while waiting, nor should it expect to recoup losses from bad management. I do not include in the latter mere mistakes or errors in judgment which are almost inevitable in the early stages of any business. The fair return is to be computed on the actual investment, not on an overissue of securities, and the failure to pay dividends to the investors must be due to the causes under consideration, not to an accumulation of a surplus or to expenditures for permanent additions or betterments, which are included in the appraisal of the physical property; in other words, the actual net earnings are to be taken. Making proper allowance for the matters just considered and perhaps for others which do not now occur to me, I define "going value" for rate purposes as involved in this case to be the amount equal to the deficiency of net earnings below a fair return on the actual investment due solely to the time and expenditures reasonably necessary and proper to the development of the business and property to its present stage, and not comprised in the valuation of the physical property.

It may be conceded that going value has no existence apart from tangible property and that commercially there is but one value, that of the property as a whole, but as the rate cannot be made to depend upon the exchange value, which would in turn depend upon the rate, it would seem to be necessary to appraise the physical property and the going value separately, and of course that is the case if the cost of reproduction rule be adopted.

It remains to consider how "going value" is to be appraised. That presents a question of fact, the determination of which is primarily within the province of the rate-making body. It is proper for this court, however, to indicate a permissible method or methods, as in *People ex rel. Jamaica W. S. Co.* v. *State Board of Tax Comrs.* (196 N. Y. 39) it indicated a rule for valuing a special franchise for taxing purposes, which has generally been followed.

Obviously, the most satisfactory method is to show the actual experience of the company, the original investment, its earnings from the start, the time actually required and expenses incurred in building up the business, all expenditures not reflected by the present condition of the physical property, the extent to which bad management or other causes prevented or depleted earnings, and any other facts bearing on the question, keeping in mind that the ultimate fact to be determined is not the amount of the expenditures, but the deficiency in the fair return to the investors due to the causes under consideration. The business in this case was twenty years old, the books of the old company were not available, and it is of course problematical whether, if produced, they would have shown the necessary facts. The question, therefore, had to be determined, as all questions of fact have to be, by the best evidence available. Here, I may repeat that mere difficulty in the proof would not justify a confiscatory rate. The value of the physical property was shown by opinion evidence as to the cost of reproduction. The same kind of evidence was given by two witnesses for the relator as to the cost of building up the business to its present state. In the appellants' brief it is said that they were men "of mature age and much experience." One witness said that $30 a meter was an arbitrary sum usually adopted by engineers as the cost of building up such a business, and he put the cost in this case at $600,000, Another witness estimated the "going value" to be $781,916. He explained at length how he arrived at that figure. He assumed the existence of two plants, situated exactly alike in the same community and with the same physical property, 1, the actual plant with its established business; 2, a suppositional plant with no business. He then estimated the length of time and expense required by the second plant to develop its business to the stage and revenue of the actual plant. There would appear to be as good ground for admitting the

opinion of a qualified expert on such a subject as on the cost to reproduce the physical property. Of course, the commission was not bound by that evidence. It had in addition the experience of the relator and its predecessor as to payment of dividends, the amount of capitalization of both, and the value of the physical property in its present condition determined as above stated. With nothing opposed to those facts and the opinion evidence it was not justified in ignoring the evidence of "going value" or of merely attaching some inappreciable importance to it. (See *Bonbright* v. *Geary*, 210 Fed. Rep. 44, 54, 56.) The first question certified must be answered in the affirmative.

Upon the next two questions we disagree with the learned Appellate Division.

In determining the cost of reproduction the commission allowed $12,717 as the cost of restoring the pavement as it existed when the mains and service pipes were laid in the streets. The relator claimed an allowance of at least $200,000 for the cost of restoring pavements subsequently laid on the theory that that cost would have to be incurred if the mains were to be laid to-day. But the new pavements in fact added nothing to the property of the relator. Its mains were as serviceable and intrinsically as valuable before as after the new pavements were laid. The controlling considerations under the preceding point also determine this. The rights of the public are not to be ignored. The question has a double aspect. What will be fair to the public as well as to the relator? (*Smyth* v. *Ames, supra.*) Should the public pay more for gas simply because improved pavements have been laid at public expense? It is no answer to say that the new expensive pavements suggest improved conditions which, though adding to the value of the plant, will not, by reason of the greater consumption, add to the expense per thousand feet of the gas consumed. The public are entitled to the benefit of the improved conditions, if thereby the relator is ena-

bled to supply gas at a less rate.   The relator is entitled to a fair return on its investment, not on improvements made at public expense.   It is said that the mains will have to be relaid.   So will the new pavements, and much oftener. Both might possibly be relaid at the same time.   The case is not at all parallel to the so-called unearned increment of land.   That the company owns.   It does not own the pavements, and the laying of them does not add to its investment or increase the cost to it of producing gas.   The cost of reproduction less accrued depreciation rule seems to be the one generally employed in rate cases. But it is merely a rule of convenience and must be applied with reason.   On the one hand it should not be so applied as to deprive the corporation of a fair return at all times on the reasonable, proper and necessary investment made by it to serve the public, and on the other hand it should not be so applied as to give the corporation a return on improvements made at public expense which in no way increase the cost to it of performing that service.

The Appellate Division felt bound by the decision of the United States Circuit Court in the *Consolidated Gas Case* (157 Fed. Rep. 849), and it is true that such an allowance was made in that case.   But the United States Supreme Court held in that case (212 U. S. 19) that the rate established was not confiscatory, and did not pass on the propriety of that allowance.   What was said in the opinion on the subject of present value was merely a general statement having no necessary relation to the question now under consideration.

We agree with the Appellate Division that annual increase in the value of land is not income.   Of course, under the rule of the *Ames Case* (*supra*), land might become so valuable as to require its use for other purposes and as to make a rate based on it unfair to the public.   The present is not such a case.

The first question should be answered in the affirma-

tive, the second, third and fourth in the negative, and the order of the Appellate Division, in so far as it remits the proceedings to the public service commission, should be affirmed, without costs.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE, COLLIN and CUDDEBACK, JJ., concur.

Order affirmed, etc.