By the Court.
Case 17845, City of Portsmouth v. Public Utilities Commission, and Case 17846, City of Portsmouth v. Public Utilities Commission, relate to the same ordinance, and the questions to be determined arise out of the conclusions of the Public Utilities Commission concerning that ordinance.
No. 17846 may be denominated the Sciotoville case, and arises from the following facts:
The United Fuel Gas Company, for some time prior to 1920, had been supplying natural gas to residents in a certain unincorporated territory contiguous to the city of Portsmouth. This territory was afterward incorporated as the village of Sciotoyille, and in October, 1920, the same was annexed *273 by the city of Portsmouth. Since the annexation, the United Fuel Gas Company has continued its service to its former Sciotoville consumers within the limits of the now city of Portsmouth. No contraetual relations ever existed between the United Fuel Gas Company and Sciotoville, or with the city of Portsmouth in relation to this service. However, the territory having been annexed to the city of Portsmouth, a certain ordinance passed by the council of the city of Portsmouth on December 15, 1920, had the effect of regulating the rate for the service of the company to this limited number of consumers within the city. The United Fuel Gas Company took an appeal from this ordinance to the Public' Utilities Commission. The United Fuel Gas Company had, however, previous to the passage of this rate ordinance filed its schedule with the commission, fixing the maximum rate for gas in the Sciotoville district of the city of Portsmouth at a maximum of 45 cents per 1,000 cubic feet, with a discount of 5 cents per 1,000 cubic feet if the bill was paid on or before the 10th of the month.
In cause No. 17845, which may be denominated the Portsmouth Gas Company case, the facts necessary to a determination of the question involved may be stated as follows:
In 1905 the council of the city of Portsmouth gave to one W. O. Johnson and his assigns a franchise to furnish natural gas to the city, which franchise was to run for a period of 25 years. This franchise was assigned to the United States Natural Gas Company in October, 1905, and that company contracted with the Portsmouth Gas Company to distribute the gas to the citizens of Portsmouth for it, and this *274 contract was approved by tbe council of tbe city. In 1909 the United States Natural Gas Company sold the franchise, with other assets, to the United Fuel Gas Company. The first schedule of rates was filed with the commission by the United Fuel Gas Company, effective January 15, 1915, 25 cents net for domestic use. On November 1, 1916, the Portsmouth Gas Company filed its first schedule; the domestic rate being 25 cents net. One year later, November 1, 1917, the rate by schedule was increased to 30 cents, and this net rate prevailed until October 27, 1920, when the rate of 40 cents net was established by filing with the commission the schedule therefor.
"We are advised by counsel that a contract was entered into in 1915 between the United Fuel Gas Company and the Portsmouth Gas Company, effective January 1, 1916, for 10 years, according to a sliding scale. This contract was afterward in fact canceled by the United Fuel Gas Company, by reason of default in payment said to have been purposely withheld by the Portsmouth Gas Company. Thereupon a new contract was entered into between the companies, which expired August 31, 1922, increasing the rate of the Portsmouth gas from 20% cents to 30 cents per 1,000 cubic feet. It was then that the Portsmouth Gas Company filed its last rate schedule, asking for 40 cents net. Thereafter, on December 15, 1920, the council of the city of Portsmouth passed the ordinance in question, establishing the rate at 30 cents net. So that the questions presented by the Portsmouth Gas Company case, No. 17845, and the Sciotoville case, No. 17846, relate to the same ordinance; the United Fuel Gas *275 Company having appealed to the commission, claiming that the rates so fixed by the ordinance were unjust and unreasonable. Upon hearing had, the commission found that said rates were unjust and unreasonable, and then proceeded to fix a 40 cent rate.
Plaintiff in error, the city of Portsmouth, prosecutes error to this court to reverse the findings of the commission, claiming that the order which it has made is unlawful and unreasonable. This brings us to the consideration of the two points involved in the review of this record:
First. Is the rate fixed by the city ordinance an unjust and unreasonable one, and is the rate fixed by the commission a fair and reasonable one?
Second. Is the finding of the commission sustained by the record and the evidence, and not against the manifest weight thereof?
Taking up these in their order: It is the contention of the plaintiffs in error that, if the rate fixed by the ordinance was not confiscatory, it then follows that 'the same was reasonable and just; the question being, not what rate the commission might have made in the premises, had it the authority to fix the same in the first place, but is the rate established by the council in its ordinance a confiscatory rate?
We think there must be a clear line of demarcation between a rate that is confiscatory in character and one that must be fair and reasonable. It is not sufficient to say that because a rate is not confiscatory in character it must necessarily follow that it is fair and reasonable and just to both parties.
*276 As is well said by counsel for plaintiff in error, the rate should give the company a fair and just return on its invested capital and property, and at the same time place no unjust burden upon the people. The public is entitled to be served at reasonable cost, and the company is entitled to a fair return on the investment, based on the value of the property used by it in the public service. People, ex rel. Kings Co. Lighting Co., v. Willcox, 210 N. Y., 479, 104 N. E., 911, 51 L. R. A. (N. S.), 1; San Diego Land & Town Co. v. National City, 174 U. S., 739, 19 Sup. Ct., 804, 43 L. Ed., 1154; Minn. Rate Cases, 230 U. S., 352, 33 Sup. Ct., 729, 57 L. Ed., 1511, 48 L. R. A. (N. S.), 1151, Ann. Cas., 1916A, 18; Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77; Smyth v. Ames, 169 U. S., 466, 18 Sup. Ct., 418, 42 L. Ed., 819; San Diego Land & Town Co. v. Jasper, 189 U. S., 439, 23 Sup. Ct., 571, 47 L. Ed., 892, and Newark Nat. Gas & Fuel Co. v. City of Newark, 92 Ohio St., 393, 111 N. E., 150. The court in the Newark case, supra, 92 Ohio St., on page 401, 111 N. E., 152, says:
“When property is devoted to a use in which the public has an interest, the public is thereby granted an interest in such business, and it is subject to control for the common gpod. Such company is entitled, therefore, only to a fair return on the value of that which is employed for the public convenience * * * and such return should be based upon the reasonable value of the property at the time it is being used by the public. ”
The basic meaning of the word “confiscate,” as defined by the lexicographers, is property that is seized and appropriated by the government to the public use. It carries with it the idea of forfeiture *277 to the public treasury or appropriation to public xise. There is no margin left over for the enjoyment of the owner of the property so appropriated and confiscated, and a rate which would have such a character would he confiscatory.
Now, if there be added above such a sum an amount which would make the rate reasonable, just, and fair to the property owner, as well as to the public, such a rate should he the one sought to be established. Unjust and unreasonable rates and confiscatory rates are by no means synonymous. A rate which would not be confiscatory in character, by reason of the amount being somewhat above the point of confiscation, yet might not he a reasonable and just rate as between the public and the owner under all the circumstances of the case. As is well said in State Pub. Util. Comm., ex rel. City of Springfield, v. Springfield Gas & Electric Co., 291 Ill., 209, 217, 125 N. E., 891, 895:
“Generally speaking, a rate which is nonconfiscatory would not be so unjust and unreasonable as would authorize setting aside the decision of the commission fixing such a rate (Public Utilities Com. v. Toledo, St. Louis & Western Railroad Co., 267 Ill., 93, 107 N. E., 774; Chicago, Milwaukee & St. Paul Railway Co. v. Public Utilities Comm., 267 Ill., 544, 108 N. E., 737), and yet there is a difference between a rate which is merely nonconfiscatory and one which is just and reasonable, and it is the just and reasonable rate which the commission is called upon to fix.”
"We also call attention to the distinction pointed out in Public Service Gas Co. v. Board of Public *278 Utility Commissioners, 84 N. J. Law, 463, 471, 87 AtL, 651, 655 (L. R. A., 1918A, 421):
“On the one hand, a just and reasonable rate can never exceed, perhaps can rarely equal, the value of the service to the consumer. On the other hand, it can never be made by compulsion of public authority so low as to amount to confiscation. A just and reasonable rate must certainly fall somewhere between these two extremes, so as to allow both sides to profit by the conduct of the business, and the improvements of methods and increase of efficiency. Justice to the consumer, ordinarily, would require a rate somewhat less than the full value of the service to him; and justice to the company would, ordinarily, require a rate above the point at which it would become confiscatory. To induce the investment and continuance of capital there must be some hope of gain commensurate with that realizable in other business; the mere assurance that the investment will not be confiscated would not suffice.”
From the foregoing we are therefore of opinion that rates are not necessarily reasonable and just because they are not so low as to be confiscatory in character. It is the function of the commission to see that the rights and obligations of both the utility and its patrons may be protected and enforced, and to deal justly between the company upon one side and the public upon the other. They should look to the evidence, aided and assisted by the skilled specialists employed in their investigations, and give due heed to testimony and evidence offered by the parties, and from the entire record reach a conclusion which to the best of their judgment is a reasonable and just one to all parties concerned.
*279 Second. This brings us, then, to a consideration whether the record discloses that the finding of the commission that the ordinance of December 15,1920, in which a maximum rate for distribution of gas within the city of Portsmouth was fixed at 35 cents per 1,000 cubic feet, with a discount of 5 cents per 1,000 cubic feet for prompt payment of bills on or before the 10th of the month, or a net rate of 30 cents, was an unjust and unreasonable rate, and whether the maximum rate of 45 cents per 1,000 cubic feet, with a discount of 5 cents per 1,000 cubic feet if paid before the 10th of the month, was a just and reasonable rate in the premises.
In considering this phase of the case we should determine whether or not there is evidence in the record sufficient to sustain the finding and order of the Public Utilities Commission, or whether such conclusion is manifestly against the weight of the evidence. (Village of St. Clairsville v. Pub. Util. Comm., 102 Ohio St., 574, 583, 132 N. E., 151.) An examination of the record discloses that the commission made an actual detailed appraisement of the property as of January 15, 1920, that further the company itself offered testimony in the premises, and that on behalf of the city affirmative evidence was also submitted.
Upon a careful examination of the same, together with a due consideration of the contractual relations of the Portsmouth Gas Company, the United Fuel Gas Company, and the city of Portsmouth, we are led to the conclusion that there is ample evidence in the record to sustain the finding made by the Public Utilities Commission, and we are of the opinion that the same is not against the manifest *280 weight of the evidence. Therefore the findings and orders of the Public Utilities Commission in cause No. 17845 and in cause No. 17846 should be and are hereby affirmed.

Orders affirmed.

Marshall, C. J., Bobinson, Jones, Matthias, Day and Allen, JJ., concur.
Wanamaker, J., dissents.