**BEAVER VALLEY WATER CO. v. DRISCOLL et al.**

**No. 3393.**

District Court, W. D. Pennsylvania.

July 5, 1938.

Joseph A. Beck, of Pittsburgh, Pa., and Homer H. Swaney, of Beaver Falls, Pa., for plaintiff.

Edward Knuff, John C. Kelley, and Harry H. Frank, all of Harrisburg, Pa., for defendants.

Before DAVIS, Circuit Judge, and GIBSON and SCHOONMAKER, District Judges.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. Beaver Valley Water Company, the plaintiff, is a public utility company and supplies water to the public in the City of Beaver Falls and various Boroughs and Townships in Beaver County, Pennsylvania. It is organized under the laws of the Commonwealth of Pennsylvania, and its principal office is in the City of Beaver Falls.

2. The individual defendants constitute the Pennsylvania Public Utility Commission (hereinafter called the "Commission"), and as such Commission they have the powers and duties prescribed by the Public Utility Law of that Commonwealth, which was approved on May 28, 1937, P.L. 1053, 66 P.S.Pa. § 1101 et seq. Two members of said Commission are residents of the Western District of Pennsylvania.

3. On June 21, 1937, the Commission instituted an Inquiry and Investigation upon its own motion for the purpose of determining the fairness, reasonableness and justness of the rates and charges of the plaintiff. Within the scope of the Inquiry and Investigation and the notice thereof, the Commission included consideration of the imposition of temporary rates under the provisions of Section 310 of the Public Utility Law, 66 P.S.Pa. § 1150. Hearings were held in Beaver, Pennsylvania, on August 6, November 4, and December 10, 1937, at which hearings 289 pages of testimony were taken and 19 exhibits prepared by plaintiff were admitted in evidence.

4. Under date of March 15, 1938, the Commission made what it called an Interim Report and Order, in and by which it arrived at a temporary rate base, made findings as to operating revenues and expenses, and ordered the plaintiff to make changes in its rate schedule which the Commission estimated would yield about $29,500 less annual revenue than the yield under the plaintiff's rate schedule then in effect. The Order of the Commission was sent to plaintiff by registered mail and was received by plaintiff on March 18, 1938. The Order

of the Commission required plaintiff to file with it on or before March 24, 1938, a supplement to its rate schedule then in effect, embodying the temporary rates designated by the Commission, which would replace all of the plaintiff's metered service rates then in effect and which supplement was to become effective April 1, 1938.

5. The plaintiff filed its Bill of Complaint herein on March 23, 1938, together with Injunction Affidavits, praying for an injunction against the enforcement of the Commission's Order. A Temporary Restraining Order was made by Robert M. Gibson, District Judge, on March 23, 1938, and such Temporary Restraining Order was continued in effect from time to time for periods not exceeding ten days until a three-judge statutory court could be convened. In the meantime the defendants filed an Answer to the Bill of Complaint, and the plaintiff filed a Supplement to its Bill of Complaint. An Answer to such Supplement has been filed by the defendants.

6. On May 16, 1938, this case came on for hearing on plaintiff's application for preliminary or interlocutory injunction before J. Warren Davis, Circuit Judge, and Robert M. Gibson and F. P. Schoonmaker, District Judges. At said hearing there were offered in evidence certain averments of the Bill of Complaint which had not been denied; by agreement of counsel the testimony and exhibits which were before the Commission; certain letters of the Secretary of the Commission, addressed to counsel for plaintiff; an admission that no oral argument had been had or briefs filed with the Commission before the Commission made its temporary rate order. The plaintiff offered to present testimony and exhibits showing the present value of its property, to which offer objection was made and sustained and exception granted. Argument was then had as to whether or not a preliminary or interlocutory injunction should be granted on the record as it then was before this court.

7. Upon the institution by the Commission of its complaint against the rates of the plaintiff, the plaintiff began the preparation of an inventory of its physical property. At such hearings the Commission was advised as to the progress which was being made. At the hearing on December 10, 1937, a witness for the plaintiff testified that the engineers preparing the inventory were striving to have it done by January 1, although, if accuracy and completeness required, it might take a little longer. The testimony shows that, following the preparation of the inventory, the plaintiff intended to have the same priced in order to determine the present cost of constructing its physical property as of the date of the inquiry.

8. At a hearing before the Commission, plaintiff put in evidence its Exhibit "J," a present cost valuation less depreciation of its property, made by an engineering firm as of January 1, 1928, which said exhibit is also before this court. The said exhibit shows that such valuation of the plaintiff's property on April 1, 1928, less accrued depreciation, amounted in the aggregate to $3,384,507. As a part of said exhibit was a tabulation of the amount expended by the Company for additions and improvements to its property from January 1, 1928, to December 31, 1937, less property retired, in the net amount of $582,850.44, which tabulation also shows that during the period from January 1, 1928, to December 31, 1937, the depreciation reserve of the plaintiff had increased $120,771.51. Accordingly, Exhibit "J" indicates that the value of plaintiff's property on December 31, 1937, was $3,846,585.93. An examination of Exhibit "S" in the record shows that there was little, if any, change between construction costs in 1928 and construction costs in June, 1937, and that, inasmuch as there was any change, the change was upward and not downward. If changes in the Fixed Capital and Depreciation accounts of the plaintiff between December 31, 1936 and June 30, 1937, as shown by Exhibit "E", are taken into account, Exhibit "J", as so brought down to the date of June 30, 1937, indicates that the value of plaintiff's property as of June 30, 1937, is $3,870,565.93.

9. The predecessor of the Pennsylvania Public Utility Commission was the Pennsylvania Public Service Commission. Before that Commission there was instituted in the year 1914, a complaint of certain consumers against the rates of the plaintiff company. That Commission made findings as to the value of the property of the plaintiff, and thereupon further proceedings were had in the Superior and Supreme Courts of Pennsylvania. The Superior Court of Pennsylvania, exercising its own independent judgment, in and by its opinion reported in Beaver Valley Water Co. v. Public Service Comm., 76 Pa.Super. 255,

798

arrived at the conclusion that the fair value for rate making purposes of plaintiff's property on February 1, 1915, was in excess of $1,475,000. Such decision was approved by the Supreme Court of Pennsylvania in an opinion reported in 271 Pa. 358, 114 A. 373.

10. At hearings before the Commission, plaintiff introduced in evidence Exhibits "H" and "I", Exhibits "H" and "I" Revised, and Exhibits "Q," "R" and "S" in connection with the testimony of Nathan B. Jacobs, an engineer who had done work in connection with the rate case before the Public Service Commission of Pennsylvania, instituted in 1914, and was familiar with the plaintiff's property since that date, and who had prepared said exhibits. Such testimony and exhibits, particularly Exhibit "Q", show that the valuation of plaintiff's property, as made by the Superior Court as of March 31, 1914, before depreciation and excluding working capital, was $1,689,386.18, and that from April 1, 1914 to June 30, 1937, there had been retired from service property which, according to the Superior Court valuation, had a value of $216,518.55, leaving as the net value of property still in service on June 30, 1937, except as mentioned, $1,472,867.63. Changes in construction cost of property such as that owned by the plaintiff between April 1, 1914, and June 30, 1937, were determined in accordance with the method as explained by the said witness and as shown in Exhibit "R", and the trended cost of such property was determined as of June 30, 1937, to be $2,759,999.81. Additions and betterments to plaintiff's property between April 1, 1914, and June 30, 1937, were ascertained to amount to $1,667,793.57 at the cost thereof, and of such additions and betterments during said period there were retired from service items of property amounting in the aggregate to $60,509.60, leaving as the net cost of such additions and betterments $1,607,283.97. The cost of such property was likewise trended to reflect changes in construction costs between the date of installation and June 30, 1937, as explained by the said witness and as shown by his Exhibit "S". The cost of constructing said additions and betterments as of June 30, 1937, was determined thereby to be $1,753,999.76. Accordingly, the said Exhibit "Q" shows that the Superior Court decision before depreciation and excluding working capital, plus additions and betterments to the plain-

tiff's property between April 1, 1914, and June 30, 1937, less retirements, trended to June 30, 1937, amounts to $4,513,999.57. Such conclusion may be slightly affected by the testimony of said witness to the effect that, inasmuch as the inventory of plaintiff's property had not been completed, he could not determine whether there was reflected in said exhibit the value or cost of any property not used or useful, but the said witness testified that the amount would be very insignificant. From the conclusion so arrived at, accrued depreciation was not deducted; but Exhibit "C" shows that on June 30, 1937, plaintiff had a depreciation reserve of $444,530.98, and that the Commission in its said Interim Report and Order calculated the accrued depreciation of plaintiff's property at 12.1 per cent. which, applied to the conclusions shown by Exhibit "Q", would be $546,000, or thereabouts, leaving the net amount of Exhibit "Q", after deducting accrued depreciation but without including working capital, $3,967,999.57.

11. The plaintiff company opened a new set of books on April 1, 1913, using as a basis the valuation of the plaintiff's property made as of that date by Mr. L. E. Chapin, an engineer (now deceased). At that time the plant account or fixed capital account of the company was set up approximately $40,000 less than the amount thereof as shown by the former books of account of the plaintiff. Additions and betterments as well as retirements and the amounts set up annually for depreciation from April 1, 1913 to June 30, 1937, as shown by the plaintiff's books of account, were set forth in Exhibit "E" before the Commission. The balance sheet of the plaintiff as of June 30, 1937 (Exhibit "B") indicates that the book value of the plaintiff's property on June 30, 1937, was $3,359,026.99, after deducting the amount in the depreciation reserve of the plaintiff, from which amount plaintiff admits that there might well be deducted certain liabilities affecting the plaintiff's working capital and amounting to $40,085.62.

12. The Injunction Affidavit of Nathan B. Jacobs states that the present value of the property of plaintiff, used and useful in rendering service to the public, less accrued depreciation thereon, whether due to wear or tear, deterioration, obsolescence, or otherwise, is not less than $3,500,000. The Injunction Affidavit of Mr. Philip Burgess states as his conclusion that the

present value of the property of the plaintiff, less depreciation, as of January 1, 1938, was in excess of $3,500,000. The reasons of both of said deponents for said conclusions are incorporated in their respective Injunction Affidavits.

13. The Commission in its Interim Report and Order, dated March 15, 1938, determined a temporary rate base for the plaintiff company solely and alone upon its estimate of the original cost of plaintiff's property less accrued depreciation for property in existence on March 31, 1914. The Commission resorted to certain testimony and exhibits which had been presented to the Public Service Commission of Pennsylvania in the rate proceeding begun in 1914. An examination of the decisions of the Public Service Commission of Pennsylvania and of the Superior Court in that proceeding shows that in such testimony and exhibits there was not included certain items of value and that there was not then ascertainable the actual cost of certain property which had been acquired for stock and bonds issued by one of the subsidiary companies of the plaintiff prior to its organization in the year 1902. The Commission took as the original cost of additions and betterments to the plaintiff's property made after April 1, 1914, figures collected from exhibits presented before the Commission by the plaintiff, and the Commission calculated the amount to be deducted for accrued depreciation as shown by its said Interim Report and Order. The temporary rate base so arrived at by the Commission was $2,312,864.85.

14. In such rate base the Commission allowed for working capital $25,000, to which the plaintiff has taken exception and claims that it should be allowed for working capital the amount of working capital which it actually had on June 30, 1937, which the plaintiff calculated as being $82,-901.41. It is deemed unnecessary to arrive at a conclusion with respect to the amount of the working capital of the plaintiff.

15. The Commission in its temporary rate base allowed nothing for cost of financing or going concern value. For going concern value the Superior Court of Pennsylvania, as of April 1, 1914, had allowed in its said decision $175,000; and for preliminary, promotion, broker's costs, etc., the Superior Court had likewise allowed $100,000; and the Supreme Court of Pennsylvania in its said decision had

expressly approved the allowance of this amount.

16. Apparently there is little or no controversy between the parties with respect to the operating revenues and operating expenses of the plaintiff, except an item of approximately $10,000 a year for a so-called Management Fee. All of the common stock of the plaintiff is owned by Consumers Water Company; and Consumers Water Company, between January, 1930, and January, 1938, had a contract with the plaintiff company under which it was entitled each year to 3 per cent. of the gross operating revenue of the plaintiff in consideration of certain executive and supervisory and managerial services, accounting and auditing, purchasing, and legal services rendered to plaintiff company. Between January, 1930, and January 1938, no executive officer was paid any salary by the plaintiff company, except its local manager, who also has the title of Vice President and Treasurer, and except the plaintiff's Secretary who is paid a nominal salary. It is deemed unnecessary to arrive at any final conclusion with respect to the reasonableness of such Management Fee for the services rendered to plaintiff by Consumers Water Company.

17. The Commission in its said Interim Report and Order dated March 15, 1938, estimated the annual operating revenue of the plaintiff under its rate schedule now in effect at $336,000, its annual operating expenses at $116,000, depreciation at $36,000, and taxes at $13,000, leaving as the net amount available for return $171,-000. Some question has been raised by the plaintiff as to the amount allowed by the Commission for taxes. As has been above mentioned, the Commission disallowed the plaintiff in its entirety a Management fee of approximately $10,000 per year without allowing to the plaintiff anything for the services of executive officers other than its local manager who is also the Vice President and Treasurer of the plaintiff, and the nominal amount paid to the Secretary of the plaintiff as above mentioned. It is manifest that the Commission should have allowed some reasonable amount for managerial and supervisory services rendered the plaintiff by Consumers Water Company, whether as officers' salaries or for accounting, management, purchasing, legal and other services. Under the temporary rate order of the

800

Commission it is estimated that the plaintiff's revenue would be reduced approximately $29,500. If such temporary rate order of the Commission were put into effect, the net revenue of the plaintiff would be reduced from $171,000 to approximately $141,500, without taking into account any compensation for management or supervisory services or any question as to taxes payable by the plaintiff and chargeable to operating expenses.

18. Under the testimony before this court, the indicated present fair value of the used and useful property of the plaintiff company is not less than $3,500,000, and the net annual revenue of the plaintiff company under the temporary rate order of the Commission is less than $141,500, or less than 4 per cent. of the present fair value of its property.

19. A return of less than 4 per cent. of the present fair value of plaintiff's property is unreasonable and confiscatory. The Commission in its Interim Report and Order allowed the plaintiff a return of 6 per cent. on the temporary rate base calculated by it.

20. The record before the Commission shows that under date of July 14, 1937, its Secretary addressed a letter to the plaintiff company, advising it that the Commission had ordered that the plaintiff present at the hearing set for August 6, 1937, certain information which was enumerated in said letter which was read into the record. Such letter required the plaintiff to submit original cost, accrued depreciation, operating revenues and expenses, the most recent inventory and appraisal, balance sheets, an estimate of working capital, and copies of Federal and State tax returns. At said hearing as well as at subsequent hearings a substantial part of such factual data was presented in evidence by the plaintiff before the Commission, and testimony was given as to why certain of such information could not be given and as to the progress which was being made in the preparation and submission of other of such data. Prior to the hearing on December 10, 1937, before the Commission, to wit, by letter of the Secretary of the Commission, dated November 29, 1937, attention was called to the fact that an examination of the record showed that information relative to original cost of property when first devoted to public use and accrued depreciation thereon had not as yet been placed in the record, and the plaintiff was

requested to have prepared for offer at such scheduled hearing such information. At said hearing on December 10, 1937, testimony was given and a statement made as to the difficulty which was experienced in ascertaining the original cost of the plaintiff's property when first devoted to public service and accrued depreciation thereon, to which reference has heretofore been made. At the conclusion of the hearing on December 10, 1937, counsel for the Commission on its behalf stated to counsel for the plaintiff that the Commission then served notice that, if the plaintiff desired to offer anything further, such data and information should be offered at that time in case the Commission deemed it in the public interest to issue a temporary rate order. To this counsel for plaintiff responded that it had no other data ready to offer at that particular time, whether on original cost or any other item, and that the plaintiff was compelled to request a continuance of the hearing to some future date for the purpose of taking further evidence which the plaintiff was intending to offer before the Commission. The hearing was then continued by the Examiner, subject to the order of the Commission. By letter of the Secretary of the Commission, dated January 6, 1938, a further hearing was scheduled for January 27, 1938, which said hearing was cancelled by the Commission, of which action the plaintiff was advised by letter of the Secretary of the Commission, dated January 10, 1938. No reason was given for the cancellation of such hearing.

21. All of the testimony presented before the Commission was taken by an Examiner, and no member of the Commission was present at any of said hearings. The Commission made its Interim Report and Order, dated March 15, 1938, without the plaintiff company being advised that the Commission would determine a rate base solely and alone upon its estimate of original cost less accrued depreciation, calculated as above mentioned. The plaintiff was accorded no opportunity to make oral argument or to file a written brief, nor was the Interim Report and Order of the Commission submitted in advance to the plaintiff company for the purpose of exceptions or other objection. In view of the foregoing, it is manifest that the plaintiff company had no adequate notice of the views or concrete claims of the Commission nor an adequate opportunity to com-

bat the same before the Commission made its Interim Report and Order.

22. Since the hearing held before the Commission on December 10, 1937, no further hearings have been scheduled by the Commission. Since the argument on plaintiff's application for preliminary injunction, counsel for the Commission has inquired of members of this court whether there is any objection to the scheduling of further hearings by the Commission, to which a negative answer has been given. It is to be expected that the Commission will schedule further hearings in this matter, to the end that the present fair value of the plaintiff's property may be finally determined, and its annual operating revenue and its annual operating expenses be fully passed upon by the Commission and that this proceeding will take its course in the courts of the Commonwealth of Pennsylvania.

23. Serious questions have been raised as to the constitutionality of Section 310 of the Public Utility Law of the Commonwealth of Pennsylvania, 66 P.S.Pa. § 1150, authorizing the fixing of temporary rates, but in view of the facts in this case it is deemed unnecessary for this court to pass upon such questions.

## Conclusions of Law.

■ I. The Commission erred in disregarding all evidence of the present value of plaintiff's property and adopting as a rate base solely and alone an estimate of the original cost of certain of plaintiff's property loss depreciation.

■ II. Under numerous decisions of the United States Supreme Court, beginning with the well-known case of Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L. Ed. 819, decided in 1898, in cases of this kind the proposition is well established that a public utility is entitled to earn a fair return upon the present value of its property used and useful in rendering service to the public, and that, although original cost of construction is to be given consideration, such costs are not to be considered exclusively and without regard to higher costs and prices later prevailing at the time of the inquiry, as is so manifestly the fact with respect to the property of the plaintiff company.

■ III. A rate order of a regulating Commission, which is in fact confiscatory, is not saved from condemnation as being in violation of the United States Constitution and particularly the Fourteenth Amendment thereto, U.S.C.A. Const. Amend. 14, on the ground that such order is only temporary in effect (Prendergast v. New York Telephone Company, 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853), because of the uncertainty as to how long such confiscatory order might be in effect and the uncertainty as to the extent of the injury done thereby to the plaintiff company and the services rendered and to be rendered by it.

■ IV. While public utility companies are subject to regulation by authorities constituted by the States of this Union, such companies and their property nevertheless remain in private ownership, subject to reasonable regulation.

■ V. Matters of substance and not of form are to be regarded in the procedure before a rate regulating commission, but in this case it is manifest that the plaintiff company has not been accorded by the Commission due process of law under the doctrine of cases recently decided by the United States Supreme Court, including Morgan et al. v. United States of America and the Secretary of Agriculture, 58 S.Ct. 773, 82 L.Ed. ——, decided by the United States Supreme Court on April 25, 1938, and more recently passed upon on a motion for rehearing on May 31, 1938, 58 S.Ct. 999, 82 L.Ed. ——, and the case of National Labor Relations Board v. Mackay Radio & Telegraph Co., 58 S.Ct. 904, 82 L.Ed. ——, decided by the United States Supreme Court on May 16, 1938.

■ VI. A preliminary or interlocutory injunction, as prayed for by the plaintiff company, should and will be granted.

## Discussion.

In view of the Findings of Fact and Conclusions of Law, discussion of any considerable length is needless.

■ The Public Utility Commission has based its temporary rate upon a method of valuation which, even though prescribed by statute, is one which is counter to the basis of valuation set forth as proper by the Supreme Court of the United States in cases similar to the instant matter. This being so, and the testimony having been taken before an Examiner, and considerable evidence as to present value having been offered, due process of law required a hearing before the Utility Commission, at

which the arguments of the counsel for the Water Company might be heard, before the issuance of the temporary rate order. See Morgan v. United States and the Secretary of Agriculture, 58 S.Ct. 773, 82 L.Ed. ——, decided April 25, 1938, by the Supreme Court of the United States.

As that value has been fixed by the testimony given before the Commission's Examiner, and as in the preliminary injunction affidavits, it appears that the temporary rate ordered by the Commission would return about 4 per cent. upon the actual value of the plaintiff's property. In the opinion of the court the amount to be derived from the rate, as founded upon the present testimony, would not give the Water Company that fair and reasonable return which is necessary in order to prevent the rate being confiscatory.

■ That Section 310 of the Public Utility Act, 66 P.S.Pa. § 1150, authorizes a temporarily larger rate than the final rate determined to recompense the utility for losses occasioned it by the establishment of a temporary rate less than the final, does not, we think, alter the confiscatory nature of the order. No assurance exists as to the length of time the temporary rate will be in effect, or that the present water consumers will remain such. See Prendergast v. New York Telephone Co., 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853.

■ The plaintiff, upon hearing, has contended that Section 310 of the Utility Act, 66 P.S.Pa. § 1150, is inherently unconstitutional, and thus incapable of sustaining any temporary rate. Decision as to this contention being unnecessary in the instant case, none is made.

The court, being of opinion that the temporary rate order is confiscatory, and that due process was not used in its establishment, a preliminary injunction will be granted. It is to be hoped no undue delay will be occasioned thereby, but that the Public Utility Commission will proceed with its hearings and establish a final rate. In that event the plaintiff, if aggrieved, may seek its remedy in the State Courts.

### Preliminary Injunction.

And now, to wit, June 23, 1938, the above entitled case having come on for hearing on application of plaintiff for a Preliminary Injunction before a Federal Court convened pursuant to Section 266 of the United States Judicial Code, 28 U.S. C.A. § 380, and said hearing having been held with the defendants represented by counsel, and after notice to the Attorney General of the Commonwealth of Pennsylvania, and the Governor of the Commonwealth of Pennsylvania; and it appearing that the issues involved herein concern important questions of constitutional law, to wit, the constitutionality of Section 310 of the Public Utility Law of the Commonwealth of Pennsylvania, 66 P.S.Pa. § 1150, not as yet passed on by the courts of said Commonwealth; and that the enforcement of the so-called Temporary Rate Order made by the defendants, constituting the Pennsylvania Public Utility · Commission, dated March 15, 1938. (a copy whereof, marked Exhibit "A", is attached to the Bill of Complaint herein) will reduce plaintiff's annual gross operating revenue approximately $29,500 per year and by reason thereof may deprive plaintiff of its property, rights and privileges without due process of law, in violation of the Constitution of the United States of America and the Fourteenth Amendment thereto, U.S.C.A. Const. Amend. 14; and that, unless the defendants are enjoined from enforcing or attempting to enforce the said Temporary Rate Order, the plaintiff may suffer grave and irreparable injury and damage; and that, unless the defendants are enjoined from enforcing or attempting to enforce the said Temporary Rate Order, the plaintiff will be required to put into effect the rates therein specified under threat of severe pains and penalties; and that the said Temporary Rate Order may have been made without the plaintiff being accorded a fair and open hearing and in violation of the rudimentary requirements of fair play: and that plaintiff has no plain, speedy, efficient or adequate remedy at law or in equity in the Courts of the Commonwealth of Pennsylvania; after due deliberation having been had and sufficient reason appearing for the granting of this order, it is now, on motion of solicitors for plaintiff, hereby ordered and decreed as follows:

1. That the defendants in the above entitled case and each of them individually in their own respective rights and in their official capacities as members of the Pennsylvania Public Utility Commission and their respective successors in office, and all of those acting or claiming to act under their authority or in aid or assistance of them, be and they hereby are restrained temporarily

from in any manner enforcing or attempting to enforce the Order of said Commission made in the rate proceedings now pending before it at Complaint Docket No. 11409 under date of March 15, 1938, prescribing purportedly under and pursuant to Section 310 of the Public Utility Law of the Commonwealth of Pennsylvania temporary rates to be embodied in a tariff, replacing the present metered service rates of plaintiff now contained in its tariff, P. U.C. No. 5, to be filed by plaintiff with said Commission on or before March 24, 1938, and to become effective April 1, 1938, which said Order is contained in Exhibit "A", attached to and made a part of the Bill of Complaint herein; and from instituting or threatening to institute against plaintiff or any of its officers, directors, servants, agents or employees any civil or criminal proceedings in any manner or form before any judge or court of any jurisdiction based upon any claimed violation of or noncompliance with said Order by plaintiff; and from imposing or attempting to impose upon plaintiff or any of its officers, directors, servants, agents or employees any penalty for plaintiff's purported noncompliance with or violation of said Order.

2. That the plaintiff in the above entitled case file a bond, with sufficient surety to be approved by this Court, in the sum of $20,000, conditioned upon the prompt repayment by the plaintiff to its customers, in the event the prayers of its Bill of Complaint are finally refused, of the sums of money received by it from its customers for water service supplied on and after April 1, 1938, under its rate schedule or tariff now in force and effect, in excess of the sums which would have been received by it from its customers if such water service had been supplied, billed and collected for at the rates and charges ordered and required by the defendants in and by their said Temporary Rate Order, together with interest at the rate of six per cent. per annum upon any and all amounts so collected and to be repaid, and upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained hereby, and that upon such bond being filed with and approved by this court, the bond of plaintiff hereinbefore filed be cancelled. .

3. That service of a conformed copy of this order upon the solicitors for the defendants herein shall be deemed suffi-cient service and notice of this Preliminary Injunction.

4. This order shall remain in force and effect until this cause comes on for final hearing and a final decree be made.